# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 01/04/2021 04:33 PM
NYSCEF DOC. NO. 1
INDEX NO. 150055/2021
RECEIVED NYSCEF: 01/04/2021

Case 1:21-cv-02001-VEC   Document 1-1   Filed 03/08/21   Page 2 of 18

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-----------------------------------------------------------------X
**INDIGO BRUNTON,**                                    **Index No.:**

                  **Plaintiff,**                              **SUMMONS**

  **-against-**

**EDUN-AMERICAS, INC., LVMH MOET**
**HENNESSY LOUIS VUITTON, INC., and JULIEN**
**LABAT,**

                  **Defendants.**
-----------------------------------------------------------------X

**TO THE ABOVE-NAMED DEFENDANTS**

      **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's attorney, an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty [30] days after the service is complete if this summons is not personally delivered to you within the State of New York); and, in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

**Dated: New York, New York**
       **January 4, 2021**

                                                    **GODDARD LAW PLLC**
                                                  *Attorneys for Plaintiff*

                           **By:**    */s/ Megan S. Goddard*
                                                    **Megan S. Goddard, Esq.**
                                                    **39 Broadway, Suite 1540**
                                                    **New York, New York 10006**
                                                    Megan@goddardlawnyc.com

**To:**    **EDUN-AMERICAS, INC.**
          86 Franklin Street, 5th Floor
          New York, New York 10013

1

**LVMH MOET HENNESSY LOUIS VUITTON, INC.**
80 State Street
Albany, New York 12207

**JULIEN LABAT**
80 State Street
Albany, New York 12207

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
INDIGO BRUNTON,

                                 Plaintiff,

   -against-

EDUN-AMERICAS, INC., LVMH MOET
HENNESSY LOUIS VUITTON, INC., and JULIEN
LABAT,

                                 Defendants.
-------------------------------------------------------------------X

Index No.:

**COMPLAINT**

*Jury Trial Demanded*

      PLAINTIFF INDIGO BRUNTON (hereinafter referred to as "Plaintiff") by her attorney Goddard Law PLLC, whose offices are located at 39 Broadway, Suite 1540, New York, New York 10006, alleges upon knowledge with respect to herself, and upon information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

      1.     This is an action brought on behalf of Plaintiff against Defendants Edun-Americas, Inc. (hereinafter referred to as "Defendant Edun") and LVMH Moet Hennessy Louis Vuitton, Inc. (hereinafter referred to as "Defendant LVMH"), (collectively known as "Defendants") for race discrimination, a racially hostile work environment, and retaliation in violation of 42 U.S.C. § 1981, the New York State Human Rights Law and the New York City Human Rights Law, together with any other causes of action which can be reasonably inferred from the facts as set forth below.

      2.     Plaintiff seeks declaratory relief, monetary damages, and punitive damages.

      3.     Plaintiff demands a jury trial.

## THE PARTIES

4. Plaintiff is a Black female citizen of the United States who resided in New York, New York at all relevant times. Plaintiff was subject to race discrimination that resulted, ultimately, in her constructive termination from Defendants.

5. Upon information and belief, at all times herein, Defendant Edun was and is a business in New York. Upon information and belief, Defendant Edun's headquarters are located at 86 Franklin Street, 5th Floor, New York, New York 10013.

6. Upon information and belief, at all times herein, Defendant LVMH was and is a foreign business corporation registered in New York and permitted to do business in New York. Upon information and belief, Defendant LVMH's headquarters are located at 80 State Street, Albany, New York 12207- 2543.

7. Upon information and belief, at all times relevant herein, Defendant Julien Labat (Defendant Labat) was and is the CEO of Defendant Edun and was Plaintiff's most Senior Supervisor at all relevant times. At all relevant times, upon information and belief, Defendant Labat worked in Defendant LVMH's headquarters at 80 State Street, Albany, New York 12207- 2543.

8. Plaintiff is and was, at all times relevant herein, Defendants' "employee" within the meaning of all relevant Federal, State and local laws, including, but not limited to, Title VII.

9. Defendants were, at all times relevant herein, Plaintiff's "employer" within the meaning of all relevant Federal, State and local laws, including, but not limited to, Title VII.

## JURISDICTION AND VENUE

10. This Complaint is brought pursuant to 42 U.S.C.A. § 1981 as well as the New

York State Human Rights Law and New York City Human Rights Law, together with any other causes of action which can be reasonably inferred from the facts as set forth below.

11. This Court has personal jurisdiction over the Defendants pursuant to CPLR §§ 301 and 302.

12. Venue is proper pursuant to CPLR § 503 based on Defendants' place of business in New York, New York, and the location where the acts of discrimination, hostile work environment, and retaliation complained of herein occurred.

## FACTUAL BACKGROUND

### Plaintiff is Subjected to a Racially Hostile Work Environment, Reports the Discrimination, and is Retaliated Against

13. On January 2, 2018, Plaintiff started working at Defendants' retail store, where she met Angele Laroq ("Sales Advisor Laroq"), a white female. Sales Advisor Laroq introduced herself as Plaintiff's manager.

14. Thereafter, Sales Advisor Laroq constantly made racially offensive and derogatory comments to Plaintiff, about Plaintiff, about customers, and about Black people in general. To Plaintiff's shock and disgust, Sales Advisor Laroq repeatedly referenced the N word, referred to Black people as "Ghetto," accused Black people of "trying to act Afro-centric," criticized Black people stereotypically, and perpetuated Black stereotypes.

15. Plaintiff was shocked that her supervisor spoke to her in such a racially offensive way and was disgusted by the things she said about Customers. At first she was so shocked she did not say anything, but it happened so regularly that Plaintiff realized that she had no choice but to ask her boss to stop creating such a racially offensive and hostile environment.

16. Plaintiff advised Sales Advisor Laroq that she was uncomfortable with the

racially hostile atmosphere and asked her to stop making racially charged comments.

17. Sales Advisor Laroq advised Plaintiff that because she was her boss, Plaintiff could not tell her what to do, and she continued to harass Plaintiff by subjecting her to a racially hostile work environment.

### Plaintiff Reports Sales Advisor Laroq's Racist and Discriminatory Behavior to Manager Realas

18. Disgusted and distressed by the ongoing hostile environment, Plaintiff reported the race discrimination to Defendants' Manager Sabrina Realas ("Manager Realas") when she came to the store on February 9, 2018.

19. Plaintiff relayed the events that had occurred, including Sales Advisor Laroq's racist behavior and the way that it made Plaintiff feel.

20. Plaintiff also advised Manager Realas that she feared retaliation because when she specifically told Sales Advisor Laroq that her comments made her uncomfortable, she responded by saying, "Well, I'm your boss you can't tell me what to do."

21. Much to Plaintiff's surprise, Manager Realas informed her that Sales Advisor Laroq was absolutely NOT her boss, and that they were at the same level. Plaintiff was upset that Sales Advisor Laroq had lied to her and misrepresented to her that she was her boss, but she was also relieved to hear that Sales Advisor Laroq did not have any power over her job.

22. Later that evening, Plaintiff texted Manager Realas, "By the way, thank you again for coming by and spending time with me today! I feel a lot better about where things are and very relieved that I can speak transparently about everything with you. I really appreciate it!"

23. Manager Realas replied, "Thank you for confiding in me! You should not ever feel like you can't speak up because your professionalism is on the line. You are completely right for the way you feel, and carry yourself so well. I don't want to lose you so anything I can do to be present, I will do. Just say the word. Have a great weekend you are so wonderful."

24. Thereafter, Defendants failed to implement an investigation concerning the race discrimination that Plaintiff had reported. Upon information and belief, Defendants did nothing in response to Plaintiff's reports of Race discrimination.

25. Thereafter, the race based hostile work environment perpetuated by Sales Advisor Laroq continued unabated. To Plaintiff's great dismay, Sales Advisor Laroq continued regularly speaking in a racially offensive way about Black customers.

### Plaintiff Receives Glowing Performance Review

26. On or about February 20, 2018, Plaintiff was scheduled for a performance review with Manager Realas and CEO Julian Labat, hereinafter CEO Labat.

27. Manager Realas and CEO Labat advised Plaintiff that she had brought the store to a "new level" and that there was a noticeable increase in sales and the cleanliness and aesthetic appeal of Defendant Edun that was commendable.

28. Plaintiff, surprised at having not received any follow up to her complaints of discrimination, again reported the race discrimination she was still being subjected to by Sales Advisor Laroq.

29. CEO Labat appeared to be surprised and annoyed that Plaintiff was reporting discrimination. Shockingly, Manager Realas and CEO Labat directed Plaintiff to communicate with Sales Advisor Laroq via email as she was "very reactive" to any conversations that

occurred and they wanted her to have a chance to "decompress." Plaintiff was shocked and offended that Defendant CEO Labat and Manager Realas seemed more concerned with protecting and managing Sales Advisor Laroq's feelings concerning the race based hostile work environment that she had created than by addressing Plaintiff's feelings about the race based hostile work environment she was enduring.

### Defendants Threaten Plaintiff Job When She Complains of Discrimination

30. Manager Realas and CEO Labat advised Plaintiff that avoiding conversations with Sales Advisor Laroq would "allow their professional relationship to become amicable." When Plaintiff questioned how exactly she could do that, she was repeatedly told to "make things work" with Sales Advisor Laroq. It soon became apparent that CEO Labat and Manager Realas had run out of patience with Plaintiff's complaints and that they did not intend to take any action at all; in fact, CEO Labat flat out stated to Plaintiff that quickly if she did not "make things work" than they would have to "discuss" her leaving Defendants.

31. Plaintiff was so upset and shocked by their lack of regard for the discriminatory environment and their retaliatory reaction to her complaints that she began to cry.

### Sales Advisor Laroq Lashes Out at Plaintiff

32. On or about February 24, 2018, Plaintiff was again scheduled to work at the same time as Sales Advisor Laroq. To her shock, Sales Advisor Laroq refused to speak to her during the 8-hour shift but at the end of the shift ordered her to do certain shared tasks on her own. When Plaintiff reminded Sales Advisor Laroq that she was not her boss, Sales Advisor Laroq ordered Plaintiff to leave the store. When Plaintiff told her that she had no right to tell her to leave the store, since she was not her boss, Sales Advisro Laroq became livid and irately defensive.

33. Upon information and belief, Sales Advisor Laroq was retaliating against Plaintiff because Defendants had informed her of Plaintiff's complaints of race discrimination.

34. Plaintiff was advised by other employees that Sales Advisor Laroq had complained bitterly to other employees that Plaintiff had "real issues regarding race." Plaintiff was further advised that Sales Advisor Laroq had begun a campaign to discredit Plaintiff and that she had investigated her online presence to find "evidence" of Plaintiff's "issues with race." Plaintiff was further advised that Sales Advisor Laroq had told the store employees that Plaintiff's days "were numbered" at Defendants.

35. Plaintiff again reported the retaliation and discrimination to Manager Realas and asked for assistance in dealing with the uncomfortable and hostile work environment. She specifically wrote: *"It was said that Angele mentioned I have "real issues" regarding race, when referencing the personal beliefs that I share on my social platforms. The nuances around what I take up question or "issue" with regarding racial concerns, or any other social / political matter, are my own and I stand by them. With that said, I do not appreciate the micro-aggressions, offensively problematic and blatantly racist commentary I've been forced to endure while working with Angele. Such examples include her unsolicited explanation as to why she's not racist, specifically citing on my 2nd day (January 3rd) that she "didn't say the N word" while singing along to rap music at a Black friend's predominantly Black family party. She avidly ridiculed Alecia and Jessica for sharing cultural experiences (of which I wasn't present for), mentioning that "it's funny" because Angele is "the only one who has actually been to Africa". More examples include her usage of the word "ghetto", which I expressed made me feel uncomfortable and why.*

*She continued to use the word despite my request, and became vehemently defensive when I mentioned yet again how uncomfortable it made me feel."*

### Defendant Edun Tells Plaintiff it will Initiate an Alleged "Investigation"

36. In an email dated March 5, 2018, Manager Realas thanked Plaintiff for reporting the discrimination and stated, "We are reviewing it very closely and ask that [you] give us some time to address it accordingly."

37. Additionally, Manager Realas created a schedule in which Sales Advisor Laroq and Plaintiff would not work together until the issue was investigated and a resolution was attained.

38. Plaintiff received an email on March 7, 2018 from Defendant CEO Labat, which stated, "We are conducting an investigation regarding the recent event at the store. As we don't have an internal HR department, the investigation is going to be managed by Rachel Cohen, HR Manager at Fendi Americas."

39. Plaintiff was hopeful that the matter would be addressed and resolved, but she was also concerned about CEO Labat, as she had heard from other employees that he regularly made racially hostile comments such as "Black models can't sell clothes," that he had refused to respond to complaints that models were being sexually harassed by Defendants' financial controller and that he had made racist comments that caused other employees to quit.

40. Still, Plaintiff was hopeful that Defendants would do the right thing.

### Plaintiff Reports the Racism and Discrimination to Human Resources

41. Plaintiff believed that an outside party, who was a trained Human Resources professional, and who had been asked to investigate the situation at Defendant Edun was a

8

step in the right direction.

42. Plaintiff dutifully met with Rachel Cohen, (hereinafter, "HR Manager Cohen") on March 8, 2018 at in her office on Madison Avenue.

43. During the interview, HR Manager Cohen asked Plaintiff to tell her in her own words about the events at Defendant Edun. Plaintiff provided a factual synopsis of the events in hope that they could come to a resolution with Sales Advisor Laroq.

44. During the interview, HR Manager Cohen's comments to Plaintiff were, "This is not OK," and "This is weird," in regard to Sales Advisor Laroq's behavior. At the end of the interview, HR Manager Cohen announced, "We will conduct a formal investigation," which surprised and concerned Plaintiff, because Defendant CEO Labat had told her that there was an investigation, not that HR manager Cohen had been brought into assess her claims and determine if there SHOULD be an investigation.

**Sales Advisor Laroq is Promoted over and Put in Charge of Plaintiff And Plaintiff is Told The Store's Mission "Isn't Just to Sell to Black People"**

45. After the meeting with HR Manager Cohen, Plaintiff and Sales Advisor Laroq continued working opposite days while the formal investigation was supposedly taking place.

46. On March 14, 2018, CEO Labat emailed Plaintiff asking her to meet with himself and HR Manager Cohen before her scheduled shift on March 15, 2018.

47. CEO Labat began by stating that they had worked with an Attorney from Defendant LVMH, and the investigation was "complete." He then went on to say that they "found no incidents of racism or harassment" at Defendant Edun. HR Manager Cohen said nothing, and would not even look at Plaintiff.

48. CEO Labat then "explained" in a demeaning and clearly annoyed tone that

Plaintiff was "confused about things" and informed her that "the situation [between Plaintiff and Sales Advisor Laroq] was caused by a lack of clarity." Plaintiff was dumbfounded.

49. CEO Labat then scolded Plaintiff, telling her, "Obviously you don't understand how things work around here. Obviously, you don't understand the mission of the company. Our mission was never to sell to just Black people. I don't know where you lost that." Plaintiff was shocked as she had no idea how her reporting discrimination, retaliation, and a race based hostile work environment had led CEO Labat to make these bizarre claims about her not understanding the mission of the company.

50. CEO Labat then informed Plaintiff that to resolve the store issues, Defendants had "decided to promote [Sales Advisor Laroq] because of the great job she is doing." He then specifically clarified, "[Sales Advisor Laroq] will be your most direct superior effective today, and you will be reporting directly to her."

51. Plaintiff was shocked that her reports of discrimination had essentially turned into a finding against her, as well as a demotion. She was further shocked that even though Defendants were well aware of the retaliation she had incurred at the hands of Sales Advisor Laroq for reporting her discriminatory behavior, Sales Advisor Laroq was now being put in a position of power over her.

52. Plaintiff knew that Sales Advisor Laroq would continue to retaliate against her - and that Defendants had empowered her to do so.

53. Upon information and belief, CEO Labat and HR Manager Cohen knew that Plaintiff would be forced to quit instead of agreeing to report to her harasser, Sales Advisor Laroq.

FILED: NEW YORK COUNTY CLERK 01/04/2021 04:33 PM  INDEX NO. 150055/2021
NYSCEF DOC. NO. 2    Case 1:21-cv-02001-VEC   Document 1-1   Filed 03/08/21   Page 14 of 18  RECEIVED NYSCEF: 01/04/2021

54. Plaintiff advised HR Manager Cohen and CEO Labat that she could no longer work there if Sales Advisor Laroq was her boss.

55. In response, CEO Labat threatened, "You better watch out. You better be careful."

56. Following Plaintiff's separation from Defendants, Plaintiff learned that, upon information and belief, no investigation into her report of discrimination had been conducted and no witnesses were interviewed.

## AS AND FOR A FIRST CAUSE OF ACTION
*(Race Discrimination in Violation of 42 U.S.C. § 1981, the New York City State Human Rights Law and the New York City Human Rights Law)*

57. Plaintiff repeats and re-alleges each and every allegation contained in the proceeding paragraphs as if set forth herein.

58. Plaintiff is a Black female and therefore a member of a protected class.

59. Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held at Defendants.

60. Defendants intentionally subjected Plaintiff to a hostile work environment, disparate treatment, and an atmosphere of adverse employment actions and decisions that culminated in Plaintiff's constructive discharge, because of her race and ethnicity in violation of Plaintiff's statutory and constitutional rights.

61. The discriminatory actions perpetrated against Plaintiff were performed purposefully or with willful indifference by Defendants' policymakers and were in accordance with Defendants' custom and/or policy and/or practice of discrimination.

62. By reason of Defendants' repeated violations of Plaintiff's statutory and constitutional rights, Plaintiff has suffered a loss of monetary and other benefits associated

11

11 of 15

with her employment.

63. As a result direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered physical manifestations of stress, extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damages to her good reputation, disruption of her personal life, familial discord, and the loss of enjoyment of the ordinary pleasures of everyday life.

64. Plaintiff was discriminated against, subjected to disparate treatment on the basis of her race and ethnicity, and subjected to a hostile work environment on the basis of her race and ethnicity in violation of 42 U.S.C. § 1981, the New York State Human Rights Law and the New York City Human Rights Law.

65. As a result of Defendants' violations of Plaintiff's civil rights, Plaintiff has been damaged in the sum of no less than $1,000,000.00.

**AS AND FOR A SECOND CAUSE OF ACTION**
*(Retaliation in Violation of 42 U.S.C. § 1981, the New York State Human Rights Law, and the New York City Human Rights Law)*

66. Plaintiff repeats and re-alleges each and every allegation contained in the proceeding paragraphs as if set forth herein.

67. As set forth in detail above, Defendants subjected Plaintiff to a hostile work environment, disparate treatment, and an atmosphere of adverse employment actions and decisions because of her race and ethnicity in violation of Plaintiff's civil rights.

68. Plaintiff repeatedly complained to Defendants and/or Defendants policymakers about the severe and pervasive race and ethnicity discrimination and hostile work environment she was subjected to during her employment with Defendants.

69. Plaintiff notified Defendants of the severe race and ethnicity discrimination and hostile work environment she was subjected to and repeatedly protested to the harassment and discrimination.

70. Plaintiff's complaints were repeatedly ignored and discouraged by Defendants in accordance with Defendants' policy, practice, and/or custom of discrimination and retaliation.

71. Defendants, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff complaining about the incidents of race and ethnicity discrimination and a hostile work environment.

72. Because she protested Defendants' unlawful behavior, Plaintiff was subjected to retaliation throughout the course of her employment.

73. The retaliation substantially interfered with Plaintiff's employment and created an intimidating, offensive, and hostile work environment.

74. Defendants knew or should have known about the retaliation and the effect it had on Plaintiff's employment but failed to take any action to stop the retaliatory conduct.

75. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income including, but not limited to wages, social security, and other benefits due to her.

76. Additionally, Plaintiff has suffered the indignity of discrimination and retaliation, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress and physical illness.

77. As a further direct and proximate result of said unlawful employment

practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

78. Based on the foregoing, Plaintiff was retaliated against by Defendants in violation of 42 U.S.C. § 1981, the New York State Human Rights Law and the New York City Human Rights Law.

79. As a result of Defendants retaliatory actions, Plaintiff has been damaged in the sum of no less than $1,000,000.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, it is specifically requested that this Court grant Plaintiff judgment as follows:

(i) On the First Cause of Action, awarding Plaintiff compensatory and other damages including punitive damages in an amount to be determined at trial but in any case no less than $1,000,000;

(ii) On the Second Cause of Action, awarding Plaintiff compensatory and other damages including punitive damages in an amount to be determined at trial but in any case no less than $1,000,000;

(iii) Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' fees, together with such other and further relief as this Court deems equitable, proper, and just.

Dated: New York, New York
      January 4, 2021

                                                Respectfully submitted,

GODDARD LAW PLLC
*Attorney for Plaintiff*

By: /s/ Megan S. Goddard
  Megan S. Goddard, Esq.
  39 Broadway, Suite 1540
  New York, NY 10006
  Office: 646-504-8363
  Megan@goddardlawnyc.com